IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,                        Criminal No. 12-0232

    v.                                 Civil No. 16-1196

JERMAINE EDMONDS, WILLIAM          ELECTRONICALLY FILED
JOHNSON,
          Defendant.

**MEMORANDUM AND ORDER OF COURT**

Before the Court is a *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion") filed by William Johnson ("Petitioner") (doc. no. 199), one of two individuals who was convicted by a jury on a two-count indictment. In this criminal action, Petitioner was found guilty by a jury of conspiracy to possess with intent to distribute 500 grams or more of cocaine, and attempting to possess with intent to distribute 500 grams of cocaine or more. He was sentenced on January 16, 2014 (within the guideline range of 97 to 121 months), to a term of 120 months of imprisonment at each count, to run concurrently.

The primary basis for Petitioner's Section 2255 Motion is that he was not as culpable as his co-defendant, Jermaine Edmonds, such that he was entitled to a two-point decrease for playing a "minimal role" in the conspiracy to possess with intent to distribute 500 grams or more of cocaine and attempting to possess with intent to distribute 500 grams of cocaine or more. He contends that a recently amended comment to a United States Sentencing Guideline requires this Court to consider several factors and, upon consideration and application of those factors, reduce his offense level by two points, resulting in a guideline range of 78 to 97 months imprisonment. The Government has filed a Response to this Motion (doc. no. 205) making the matter ripe for adjudication.

## I.    Standard of Review

### A.    Evidentiary Hearing

When a Petitioner brings a motion to vacate sentence pursuant to Section 2255, the district court has discretion whether to conduct an evidentiary hearing. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (citing *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005)). However, the District Court is required to hold an evidentiary hearing on a motion to vacate sentence unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. *Id.* (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). This is not a high bar for a movant to meet, especially since the Court, in considering a Section 2255 claim, "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Id.* (quoting *Forte*, 865 F.2d at 62); see also Rules Governing § 2255 Proceedings, Rules 4 and 8.

Thus, a Section 2255 Motion "'can be dismissed without a hearing [only] if: (1) the [movant's] allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). A district court's decision not to hold an evidentiary hearing may be reversed for abuse of discretion if "the files and records of the case are inconclusive on the issue of whether [the] movant is entitled to relief." *Id.* at 131 (citing *Solis v. United States*, 252 F.3d 289, 294-95 (3d Cir. 2001)).

In addition, a *pro se* pleading, akin to the Section 2255 Motion presently before this Court, is held to less stringent standards than pleadings drafted by attorneys. *Estelle v. Gamble*,

429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, a *pro se* habeas petition should be construed liberally. See *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

**B.    Section 2255**

Section 2255 of Title 28 of the United States Code provides that:

> (a) A prisoner in custody under sentence of a court established by Act of Congress  claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Further, and as noted above, Section 2255 provides that the Court shall grant a prompt hearing unless Petitioner's Motion to Vacate, the files, and the records in this case "conclusively show that the prisoner is entitled to no relief[.]"  *See* 28 U.S.C.  § 2255(b).

Notwithstanding the above, it is important to note that a Section 2255 Motion, such as the one presently before this Court, is a collateral challenge to the sentence that was imposed by this Court and affirmed on appeal by the United States Court of Appeals for the Third Circuit.  As a collateral challenge, relief under Section 2255 is available only when "the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and ... 'present[s] exceptional circumstances where the need for the remedy afforded by the writ ... is apparent.'" *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (*quoting Davis v. United States*, 417 U.S. 333, 346, (1974) (*quoting Hill v. United States*, 368 U.S. 424, 428, (1962)).

## C.    Ineffective Assistance of Counsel

The standard of review for ineffective assistance of counsel is a familiar one.  It occurs when an attorney's performance falls below "an objective standard of reasonableness," and there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Luparella v. U.S.*, 335 Fed. Appx. 212, 214 (3d Cir. 2009) citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate "(1) that his counsel's performance was deficient; and (2) that he was prejudiced by it." *Brennan v. U.S.*, 322 Fed.Appx. 246, 246-247 (3d Cir. 2009) citing, *Lilly*, 536 F.3d at 195 and *Strickland*, 466 U.S. at 687.

In order to meet the first part of the two-part *Strickland* test, an attorney's performance may be deemed deficient when "'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *U.S. v. Hankerson*, 496 F.3d 303, 301 (3d Cir. 2007), citing *Strickland* at 687.   "In assessing counsel's performance, the reviewing court must be 'highly deferential,' and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " *Ibid*.

The United States Court of Appeals for the Third Circuit in *Hankerson* further explained that in order to meet the second part of the two-part *Strickland* test:

> . . . If a defendant succeeds in satisfying the first component, he must then also show prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In the sentencing context, prejudice exists where the deficient performance affected a

defendant's sence. See, e.g., *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (holding that any increase in sentence resulting from deficient performance can constitute prejudice).

*Hankerson*, 496 F.3d at 310-11.

This Court has considered Petitioner's § 2255 Motion according to these standards.

## II. Procedural and Factual Background

### A. Procedural History

On July 31, 2012, a special agent from the DEA filed a criminal complaint accusing Petitioner and his co-conspirator, Edmonds, of conspiracy and attempt to possess with intent to distribute 500 grams or more of cocaine. On August 28, 2012, the grand jury charged Petitioner and Edmonds with one count of conspiracy to possess with intent to distribute 500 grams or more of cocaine, and one count of attempting to possess with intent to distribute 500 grams or more of cocaine. Petitioner and Edmonds were arraigned on these charges on September 4, 2012, both pled not guilty, and both were incarcerated until trial.

Both Petitioner and Edmonds were represented throughout these proceedings including the jury trial. Jury selection and the trial on these two charges began on August 21, 2013. On August 23, 2013, the jury returned a verdict of guilty on both counts as to each defendant.

This Court held a sentencing hearing for Petitioner on January 16, 2014, and sentenced Petitioner to 120 months imprisonment at each count to run concurrently. Petitioner timely filed his notice of appeal with the United States Court of Appeals for the Third Circuit on January 27, 2014. See doc. no. 157 assigning USCA case number 14-1202. The Court of Appeals affirmed the Judgment of this Court on October 5, 2015. See doc. no. 184. Presently before this Court is

Petitioner's Section 2255 Motion, timely filed on August 9, 2016, wherein Petitioner seeks to reduce his imprisonment term.

### B. Factual Summary

On July 31, 2012, an undercover drug enforcement agent ("DEA agent") received a telephone call from Jermaine Edmonds who indicated that he was 15 minutes away and would be bringing money to purchase three kilograms of cocaine. The DEA agent waited inside a Panera restaurant for Edmonds' arrival.

Prior to this meeting, Edmonds had spoken on more one occasion with a DEA confidential informant and the two had agreed that the informant would sell Edmonds three kilograms of cocaine for $91,500.00. The DEA agent who waited inside the Panera restaurant was posing as the confidential informant's driver.

When Edmonds arrived at the Panera restaurant, he met and talked with the undercover DEA agent. The DEA agent called the confidential informant on the telephone and handed the telephone to Edmonds so Edmonds could speak to the informant about the drug deal. Edmonds led the agent to a vehicle, a Ford Explorer, and the agent got in the vehicle and looked for the money. Edmonds walked away to a different vehicle, a Dodge Charger.

Upon Edmonds' return to the Explorer where the DEA agent was seated, Edmonds told the agent that "his bro" was not comfortable. The DEA agent offered to end the deal stating he was instructed by the confidential informant not to perform the deal without first seeing the money. Edmonds responded by stating that he wanted to go talk with his associate, and he left the DEA agent again. Two minutes later Edmonds returned and led the DEA agent out of the Explorer in which he was seated and introduced the agent to two other individuals – one of whom was Petitioner, William Johnson.

Johnson instructed another person present to open the trunk of the Dodge Charger, and upon doing so, the DEA agent observed several bundles of currency. When the DEA agent asked if there were "big bills" among bundles of currency, Petitioner told the agent he was free to inspect them. When the DEA agent asked if there was enough money in the trunk for "three," Petitioner responded that there was close to thirty thousand dollars in the trunk and that was enough money for "some;" but, Petitioner also informed the agent that "somebody else" wanted some of the drugs and was bringing more money.

The DEA agent, knowing that Edmonds and the confidential informant had agreed upon $91,500.00 as payment for three kilos of cocaine, walked away from the vehicle telling Edmonds and Petitioner there was not enough money. Petitioner told the DEA agent that there was more money available and that he could have the rest of the money delivered shortly. Petitioner also told the agent that he would be selling the cocaine for a profit, stating that he would be "charging 45 [thousand dollars]," as opposed to the thirty it was costing him personally. The agent agreed to wait for a period of time to see if the remainder of the money would arrive. While the agent waited in a nearby store, Edmonds called him several times to ask that he not leave before the deal was finished.

Over one hour later, Edmonds called the agent saying the rest of the money had arrived and other agents conducting surveillance conducted the arrests of Edmonds, Johnson, and other individuals who arrived with the additional money. The total amount of currency confiscated that day was $61,695.00.

### III. Analysis of Petitioner's Claims[1]

#### A.        Amendment to Commentary to USSG § 3B1.2

Petitioner claims he is entitled to a two-point reduction in his offense level under USSG § 3B1.2, based on recently added commentary to that specific sentencing guideline.  When this Court sentenced Petitioner (on January 16, 2014), this commentary did not exist.  It was added on November 1, 2015.  The sentencing guideline itself reads:

#### § 3B1.2 Mitigating Role

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.  The commentary to § 3B1.2 (as amended on November 1, 2015) reads as follows:

(C) Fact-Based Determination.--The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

---

[1] Based on the facts of this case as discussed more thoroughly herein, this Court finds it is not required to hold an evidentiary hearing because the § 2255 Motion along with the records of this case conclusively show that Petitioner is not entitled to relief.

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

Commentary to U.S.S.G. § 3B1.2 (as amended November 1, 2015).

Petitioner cites to a case emanating from the United States Court of Appeals for the Ninth Circuit – a decision which is not binding on this Court – in support of his position that the above-commentary to the guideline should be applied retroactively to his case and thereby reduce his sentence by two offense levels. *See U.S. v. Quintero-Leyva*, 823 F.3d 519 (9th Cir. 2016). Notably, no court within the Third Judicial Circuit has relied upon the *Quintero-Leyva* case.

In addition, as counsel for the Government notes, the *Quintero-Leyva* case retroactively applies to cases on direct appeal within the Ninth Judicial Circuit, but not to cases where a Section 2255 collateral review is sought. Government's counsel cited to two district court opinions within the Ninth Judicial Circuit which were decided after the *Quintero-Leyva* case in support of its position. *See United States v. Yanez*, No. 13CR3515-LAB-1, 2016 WL 4248541, at *1 (S.D. Cal. Aug. 11, 2016); *see also Sandidge v. United States*, No. 16-CV-00871-JPG, 2016 WL 4154929, at *2 (S.D. Ill. Aug. 5, 2016).

This Court finds that an amendment to a comment to a sentencing guideline such as the one at issue here, cannot be applied retroactively in a Section 2255 collateral attack. Under the facts presented here – this Court sentenced Petitioner well before the comment to USSG § 3B1.2 was amended to include additional detail describing what constitutes "minimal" and "minor" participants to a crime. Thus, Petitioner cannot argue that this Court imposed an illegal sentence upon him – this commentary was not in existence when this Court sentenced him. Similarly, Petitioner cannot argue that this Court imposed a sentence in violation of any laws of the United States – again, this USSG comment (which is not "law") did not exist when this Court sentenced Petitioner. Therefore because Section 2255 relief is only afforded in situations where a court imposes a sentence "in violation of the Constitution or laws of the United States, or . . . without jurisdiction to impose such sentence, or . . . in excess of the maximum authorized by law, or . . . otherwise subject to collateral attack," and because this Court did not impose such a sentence, Petitioner's Section 2255 argument related to USSG § 3B1.2 fails.

In addition, this Court notes that the Court of Appeals for the Third Circuit, in *United States of America v. Omar Caliph Aquil*, recently held as follows:

> . . . [W]e look to certain factors to determine whether a defendant is entitled to a reduction for a minor role under § 3B1.2. These factors are "(1) the defendant's awareness of the nature and scope of the criminal enterprise; (2) the nature of the defendant's relationship to the other participants; and (3) the importance of the defendant's actions to the success of the venture. The District Court should consider each of these factors in relation to the other participants in the conspiracy." *United States v. Brown*, 250 F.3d 811, 819 (3d Cir. 2001) (citations and quotation marks omitted); see also *Isaza-Zapata*, 148 F.3d at 238 ("The district courts are allowed broad discretion in applying this section, and their rulings are left largely undisturbed by the courts of appeal."). It is the defendant who "bears the burden of demonstrating that other participants were involved and that, under the standards set forth above and the facts of his particular case, the minor role adjustment should apply." *Id*. at 240.

*Aquil*, __Fed. Appx.__, 2016 WL 3902170, at *2 (3d Cir. July 19, 2016).  Clearly, the United States Court of Appeals for the Third Circuit, on direct appeal, not upon a review of a collateral (Section 2255) attack, considered several factors.  The Court of Appeals for the Third Circuit did not consider whether these factors should apply in a situation such as the present matter – specifically, one where Petitioner was sentenced prior to an amendment to a comment of a sentencing guideline.  Thus, the *Aquil* case is not precisely on point.  However, even if this Court were to apply the law emanating from the *Aquil* case, the application of these factors would also lead this Court conclude that Petitioner was not entitled to a reduction for a minor role under § 3B1.2.

First, upon consideration of Petitioner's awareness of the nature and scope of the criminal enterprise, the Court finds that Petitioner was aware of the nature and scope of the criminal enterprise.  As noted above in the "Factual Summary" section, Petitioner was present in the parking lot of the Panera restaurant for approximately three to four hours while he and Edmonds tried to consummate this drug deal.  During that time, Petitioner was the person who instructed other persons present to open the trunk of the Dodge Charger to show the undercover DEA agent that he and Edmonds had "some" money (thousands of dollars).  It was Petitioner who represented to the DEA agent that someone else was bringing yet more money.  Petitioner was also the person who responded to the DEA agent when the agent asked if there was enough money in the trunk for "three."  Petitioner responded by stating that there was close to thirty thousand dollars in the trunk and that was enough money for "some," but that "somebody else" wanted some of the drugs and was bringing more money.  Furthermore, when the DEA agent indicated to Petitioner and Edmonds that there was not enough money,[2] it was Petitioner who

---

[2] The undercover DEA agent knew from the confidential informant that the price Edmonds had agreed to pay was $91,500.00.

reassured the DEA agent that there was more money available and that he could have the rest of the money delivered shortly. Moreover, Petitioner told the DEA agent that he would be selling the cocaine for a profit, and stated that he would be "charging 45 [thousand dollars]," as opposed to the thirty thousand dollars it was costing him.[3] All of this evidence weighs in favor of a finding that Petitioner knew what drug he was there to buy (cocaine) as well as how much of it (three kilos) from the undercover DEA agent.

Second, upon consideration of the nature of the Petitioner's relationship to the other participants in the conspiracy – specifically, Edmonds – the Court finds that Petitioner and Edmonds had a pre-established relationship with one another. The Court first notes that Edmonds called Petitioner "bro" on more than one occasion. In addition, the evidence of record also shows that Edmonds took instruction from Petitioner on more than one occasion during the transaction – the first time when he returned to the DEA agent in the Explorer commenting that "his bro" was not comfortable showing him the money; and the second time, when Petitioner instructed those present to open the trunk in the DEA agent's presence. In addition, it was Petitioner who indicated that someone else wanted some of the drugs and could bring additional money, and reassured the DEA agent that "they" had enough. Although Edmonds was clearly the point of contact between Petitioner and the confidential informant, the evidence clearly shows that Petitioner was buying these drugs with Edmonds and was working with Edmonds (and others) to facilitate the completion of the deal.

Finally, upon consideration of the third factor, it is unequivocal based on the evidence that Petitioner was enormously important to the success of this particular drug deal. It was Petitioner who gave permission for the DEA agent to look inside the trunk. It was Petitioner

---

[3] During trial the Government's expert witness testified that bulk quantities of cocaine sold for $35,000 to $36,000 in Western Pennsylvania, and that $91,500 for "three" kilos of cocaine represented a discount.

who suggested that the DEA agent closely inspect the amount of money in the Charger to ascertain if there were large bills in the currency. It was Petitioner who indicated to the DEA agent that additional money could be, and would be, forthcoming. It was Petitioner who shared his plans with the DEA agent regarding how he planned to profit from the sale of his share of the drugs. Without Petitioner's money and his connection to additional sources of funding, this drug deal simply would not have been consummated.

## IV. Certificate Of Appealability

Under 28 U.S.C. § 2253(c)(2), a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." For the reasons stated above, Petitioner has failed to make such a showing. Therefore, a certificate of appealability will not issue.

## V. Conclusion

Petitioner is not entitled to a two-point reduction in his offense level based upon an amendment to a comment to USSG § 3B1.2 because the newly amended comment to the sentencing guideline cannot be applied retroactively in a Section 2255 collateral attack. Moreover, even if this Court had to apply the factors set forth by the United States Court of Appeals for the Third Circuit in *United States of America v. Omar Caliph Aquil* pertaining to USSG § 3B1.2, the Court finds that the application of these factors to the facts present in this case would not require a two-point reduction in the offense level. Accordingly, Petitioner's Section 2255 Motion must be denied. No certificate of appealability shall issue. An appropriate Order follows.

**ORDER**

AND NOW, this 22nd day of September, 2016, it is hereby ORDERED, ADJUDGED,

and DECREED that Petitioner's Motion For Habeas Corpus Relief Under 28 U.S.C. § 2255

(Doc. No. 199) is hereby **DENIED**. No certificate of appealability shall issue.


<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge


cc:    William Johnson
      33763-068
      FCI Morgantown
      PO Box 1000
      Morgantown, WV 26507

      All Registered ECF Counsel and Parties